UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KALONJI MAHON,

                             Plaintiff,

                    -against-

COMMISSIONER OF NEW YORK CITY POLICE
DEPT., GOVERNOR OF NEW YORK STATE,
DETECTIVE (former) LUIS RODRIGUEZ, Shield No.
3110, North Bronx Narcotics Bureau, SERGEANT
JOHN URENA, Narcotics Bureau Bronx (N.B.B.X.),
and CITY OF NEW YORK,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:
:
:

15 Civ. 4120 (AJP)

**OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Kalonji Mahon brings this § 1983 action alleging violations of his rights under the Constitution and New York law. (See generally Dkt. No. 2: Compl.) Mahon seeks injunctive relief, and compensatory and punitive damages. (Compl. ¶ V.) Presently before the Court is defendants' summary judgment motion. (Dkt. No. 34: Notice of Mot.) The parties have consented to decision of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 29.) Mahon has not responded to defendants' motion, and the time to do so has passed. (See Notice of Mot. ("[P]ursuant to Court Order dated March 7, 2016, opposition papers, if any, shall be filed on or before April 15, 2016."); Dkt. No. 31: 3/7/16 Order)

        For the reasons set forth below, defendants' summary judgment motion is GRANTED.

## FACTS

        On December 1, 2010, Kalonji Mahon sold two bags of crack cocaine to an

undercover police officer in exchange for $30 of pre-recorded buy money ("PRBM"). (Dkt. No. 37: DeCastro Aff. Ex. D: O.C.C.B. Buy Report.)[1/] Mahon was arrested later that day by Detective Luis Rodriguez, who recovered $207 from Mahon (Ex. G: Property Clerk Invoice), including the $30 of PRBM (Ex. F: Mahon Dep. at 78-79; O.C.C.B. Buy Report; Dkt. No. 2: Compl. ¶ II(D)). Sergeant John Urena supervised Mahon's arrest. (Compl. ¶ II(D).)

   Detective Rodriguez created a post-arrest property voucher for $182, accounting for $177 recovered from Mahon and $5 of PRBM. (Property Clerk Invoice.) The remaining $25 of PRBM was returned to the N.Y.P.D. fund. (Property Clerk Invoice.) Mahon claims that his property was vouchered inaccurately, he was not given "adequate notice/receipt," and ultimately his property was not returned to him in its entirety. (Compl. ¶ II(D); id. ¶ III; Mahon Dep. at 78-79, 82-83.) Mahon alternately states that excluding the PRBM he had exactly $182 on his person at the time of his arrest (Mahon Dep. at 79), and that he had more than $182 (probably $200) on his person at the time of his arrest (Mahon Dep. at 83; Dkt. No. 32: 2/17/16 Conf. Tr. at 9).

   On December 6, 2010, Mahon was indicted by a Bronx County grand jury. (Ex. E: Grand Jury Indictment No. 4569-10.) On May 21, 2012, Mahon was convicted in Supreme Court, Bronx County of third degree criminal possession and sale of a controlled substance. (Ex. H: Certificate of Disposition.) At Mahon's trial, the prosecution presented as evidence a photocopy of the PRBM the undercover officer used to purchase crack cocaine from Mahon on December 1, 2010. (Mahon Dep. at 92-93.) Sergeant Urena testified that the N.Y.P.D. preserves only the smallest bill from the PRBM. (Compl. ¶ II(D).)

   Mahon alleges that the "municipal defendant New York City Police Department has

---

[1/]  Unless otherwise indicated, all references to exhibits are to the exhibits to the DeCastro Affidavit, Dkt. No. 37.

created [a] widespread unofficial policy, custom or practice where PRBM/U.S. currency is missing from it's obligation/duty to provide adequate and true notice due." (Compl. ¶ II(D).) Mahon asserts that the City's policy of recycling PRBM for successive buy and bust operations allows arresting officers to "dummy up the receipts" (Mahon Dep. at 93), and creates a chain of custody issue that runs afoul of due process and interferes with adequate access to the Courts (Compl. ¶ V; see also Mahon Dep. at 82-83, 92; 2/17/16 Conf. Tr. at 14, 17).

Mahon additionally alleges that the N.Y.P.D. Commissioner is liable for failing to train his subordinates to account for arrestees' property after buy and bust operations, and that the Governor of New York is liable for creating an "environment where N.Y.P.D. members normal, usual, ongoing practice [is] to lose U.S. currency through issue of false receipt, and claim that PRBM is being recycled without due notice, chain of custody or record." (Compl. ¶ II(D).)

## ANALYSIS

## I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers

v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to

---

[2]    See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

        In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

        "The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[3/] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

---

[3/]    See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645

requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[4/]

## II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON MAHON'S § 1983 CLAIMS

The Court construes Mahon's complaint liberally, and reads three due process claims into his allegations.  (Dkt. No. 2: Compl.)  First, that on Mahon's December 1, 2010 arrest his personal property was taken from him without due process of law.  (Compl. ¶ II(D).)  Second, that the City's failure to present as evidence at Mahon's trial the physical PRBM recovered from Mahon's person created a "chain of custody" problem that violated due process.  (Ex. F: Mahon Dep. at 92; see also Dkt. No. 22: 1/12/16 Conf. Tr. at 18; Dkt. No. 32: 2/17/16 Conf. Tr. at 16-17.)  Third, although nebulously articulated, appears to be that the City's policy of "recycl[ing]" PRBM violates due process generally.  (Compl. ¶¶ II, III.)

### A.     New York State Law Provides Mahon an Adequate Remedy for Property Deprivation

To the extent Mahon's claim is that Detective Rodriguez' allegedly inadequate voucher (see page 2 above) deprived him of his personal property without due process of law, "such

---

(2003).

[4/]     See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

claim is barred where the state provides a meaningful post-deprivation remedy under state law."

Omor v. City of N.Y., 13 Civ. 2439, 2015 WL 857587 at *8 (S.D.N.Y. Feb. 27, 2015) (citing

Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984) ("[A]n unauthorized intentional

deprivation of property by a state employee does not constitute a violation of the procedural

requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-

deprivation remedy for the loss is available.")).  The Second Circuit has applied this principle to find

that if the state provides an adequate post-deprivation remedy, a "random and unauthorized"

deprivation of property will not give rise to a § 1983 claim.  Butler v. Castro, 896 F.2d 698, 700 (2d

Cir. 1990); see also, e.g., Watts v. N.Y.C. Police Dep't, 100 F. Supp. 3d 314, 328 (S.D.N.Y. 2015);

Ruane v. Cty. of Suffolk, No. CIV. A. 12-1658, 2015 WL 2337329 at *9 n.6 (E.D.N.Y. May 13,

2015).

Further, "the Second Circuit has determined that 'New York in fact affords an

adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'"  Acevedo v.

Fischer, 12 Civ. 6866, 2014 WL 5015470 at *13 (S.D.N.Y. Sept. 29, 2014) (quoting Jackson v.

Burke, 256 F.3d 93, 96 (2d Cir. 2001)); see also, e.g., Toliver v. City of N.Y., 10 Civ. 5806, 2013

WL 6476791 at *7 (S.D.N.Y. Dec. 10, 2013) ("It is well established that New York provides inmates

with the opportunity for a meaningful postdeprivation hearing through state law causes of action for

'negligence, replevin, or conversion which could fully compensate [the plaintiff] for his alleged

property loss.'"), R. & R. adopted, 2014 WL 549402 (S.D.N.Y. Feb. 11, 2014).  Accordingly, a

claim in New York for a random and unauthorized property deprivation is barred from federal court

review.

Mahon presents no evidence to suggest that the alleged property deprivation was not

"random and unauthorized."[5/]  Mahon's "'failure to take advantage'" of the post-deprivation remedy provided by New York State law "'does not convert his cause of action into a constitutional due process claim.'"  Watts v. N.Y.C. Police Dep't, 100 F. Supp. 3d at 329.  As New York state provides an adequate post deprivation remedy, and Mahon fails to show that the alleged property deprivation was not a "random and unauthorized" act, this claim is dismissed.

        **B.**    **Mahon's Evidentiary Claim is Barred by His Conviction**

        Mahon contends that the physical PRBM recovered from him upon his arrest, rather than photocopies of the PRBM, should have been vouchered and presented as evidence at trial.  (See pages 2-3 above.)  Mahon additionally asserts that the City's failure to preserve the PRBM created a "chain of custody" issue that runs afoul of substantive due process, and interfered with his adequate access to the court.  (See page 3 above.)

        To the extent that Mahon challenges the evidentiary admissibility or sufficiency of the photocopies of PRBM that were presented as evidence against him at trial, such claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).  Under Heck, a state prisoner may not bring a § 1983 claim that "would necessarily imply" the invalidity of his underlying conviction, unless the conviction already has been invalidated.  Heck v. Humphrey, 512 U.S. at 486-87, 114 S. Ct. at 2372; see also, e.g., Poventud v. City of N.Y., 750 F.3d 121, 132 (2d Cir. 2014) (en banc).

        Mahon's due process and access to court claims implicate the validity of his state court conviction.  As a Brady violation necessitates a new trial, Mahon's claims imply that his conviction was invalid.  See, e.g., Poventud v. City of N.Y., 750 F.3d at 132-34; Bowers v. Kelly,

---

[5/]    Mahon states that the PRBM was recycled "against the [N.Y.P.D.'s] written policy" (Dkt. No. 32: 2/17/16 Conf. Tr. at 14), which would support a finding that any property deprivation in fact was random and unauthorized.

13 Civ. 6265, 2015 WL 2061582 at *4 (S.D.N.Y. May 4, 2015).  The Court interprets Mahon's access to court claim as a claim that the City's failure to preserve the PRBM prevented him from mounting a full defense at trial.  This claim too challenges the validity of Mahon's underlying conviction.  See, e.g., Hunter v. City of N.Y., 35 F. Supp. 3d 310, 316-17 (S.D.N.Y. 2014) ("To the extent that Plaintiff asserts that his constitutional rights were violated by the arresting officers' failure to hand over the surveillance tape to the district attorney in a timely fashion . . . Plaintiff is challenging the constitutionality and therefore the lawfulness of his conviction.").  Mahon's underlying conviction has not been invalidated.  Thus, Mahon's evidentiary claims as to the PRBM are barred by Heck and are dismissed without prejudice.  See, e.g., Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) ("Disposition of the case on Heck grounds, however, warrants only dismissal without prejudice . . . ."); see also, e.g., Bowers v. Kelly, 2015 WL 2061582 at *4.

Even if Mahon's claim were not barred by Heck, a break in chain of custody "do[es] not bear upon the admissibility of evidence, only the weight of the evidence."  United States v. Hemmings, 482 F. App'x 640, 643 (2d Cir.), cert. denied, 133 S. Ct. 256 (2012); see also, e.g., Crawford v. Artuz, 165 F. Supp. 2d 627, 636 (S.D.N.Y. 2001); People v. Moore, 213 A.D.2d 352, 353, 624 N.Y.S.2d 412, 413 (1st Dep't 1995).[6/]  A challenge based on the weight of the evidence is a state law claim without corollary in federal law, and does not rise to the level of a constitutional violation.  See, e.g., McKinnon v. Sup't, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011), cert. denied, 132 S. Ct. 1151 (2012); Lopez v. Sup't of Five Points Corr. Facility, 14 Civ. 4615, 2015 WL 1300030 at *14 (S.D.N.Y. Mar. 23, 2015), R. & R. adopted, 2015 WL 2408605

---

[6/]    At least one judge in this district has found that pre-recorded buy money may not require a chain of custody at all, as it "'possesses unique characteristics or markings and is not subject to material alteration which is not readily apparent.'"  Alvarado v. Burge, 05 Civ. 1851, 2006 WL 1840020 at *3 (S.D.N.Y. June 30, 2006).

(S.D.N.Y. May 20, 2015); Wilkerson v. N.Y.S. Bd. of Parole,13 Civ. 3817, 2015 WL 678581 at *23 (S.D.N.Y. Feb. 17, 2015); Jones v. LaValley, 11 Civ. 6178, 2014 WL 1377589 at *17 (S.D.N.Y. Apr. 3, 2014) (Peck, M.J.), R. & R. adopted, 2015 WL 1439406 (S.D.N.Y. Mar. 30, 2015), appeal dismissed, No. 15-1209 (2d Cir. May 29, 2015).

### C.   Mahon Fails to Establish An Underlying Constitutional Violation For Monell Liability

Mahon's Monell claim is based on the City's allegedly "widespread unofficial policy, custom or practice where[by] P.R.B.M./U.S. currency is missing from it's obligation/duty to provide adequate and true notice due to person equally . . . in the court of law."  (Dkt. No. 2: Compl. ¶ II(D).)  The City contends that Mahon fails to allege a constitutional violation, and proffers no evidence of a municipal policy or custom.  (Dkt. No. 38: City. Br. at 10-13.)

### 1.   Standards Governing Monell Claims

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior.  E.g., Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991).  Rather, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy.  See, e.g., Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

The plaintiff need not identify an explicit, official policy or practice.  See, e.g., Patterson v. Cty. of Oneida, 375 F.3d at 226; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). It is sufficient to show a widespread pattern of behavior that constitute a "custom or usage with the force of law" or "the constructive acquiescence of senior policy-making officials."  Patterson v. Cty. of Oneida, 375 F.3d at 226 (quotations omitted); see, e.g., Connick v. Thompson, 563 U.S. at 61, 131 S. Ct. at 1359 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."); Belpasso v. City of N.Y., 07 Civ. 3627, 2008 WL 2676579 at *5 (S.D.N.Y. July 2, 2008); Gorton v. Gettel, 04 Civ. 0236, 2007 WL 2154193 at *9 (S.D.N.Y. June 22, 2007), aff'd, 554 F.3d 60 (2d Cir. 2009).  "A policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'"  Patterson v. Cty. of Oneida, 375 F.3d at 226; see, e.g., Connick v. Thompson, 131 S. Ct. at 1359.  Any analysis of an allegation of municipal liability under § 1983 begins with "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

### 2.    Application to Mahon's Claim

Mahon challenges the City's alleged policy of recycling PRBM on several grounds. Mahon's first claim appears to be that because the City recycles PRBM from one buy and bust operation to the next, an arrestee's personal money can get "mixed up" with the PRBM rather than being vouchered and eventually returned.  (Ex. F: Mahon Dep. at 83; Dkt. No. 2: Compl. ¶¶ II(D).) As an initial matter, an unauthorized intentional deprivation of property by a state employee does not constitute a constitutional violation if state law provides a meaningful post deprivation remedy,

as New York does.  See cases cited at pages 6-7 above.  Accordingly, Mahon cannot establish an injury to a constitutionally protected right on this basis.

Further, although Mahon states that his December 1, 2010 arrest was the second instance in which the N.Y.P.D. failed adequately to voucher and return his property (Mahon Dep. at 83), he sets forth no facts as to the first instance, and otherwise adduces no evidence to establish the existence of a policy or practice.  Even accepting Mahon's allegations as to the first instance, his bare allegations are insufficient to establish a municipal policy.  See, e.g., Giaccio v. City of N.Y., 502 F. Supp. 2d 380, 389 (S.D.N.Y. 2007) (where plaintiff alleged only two unlawful incidents, there was "insufficient evidence in the record to support a finding of a custom, policy or practice"), aff'd, 308 F. App'x 470 (2d Cir. 2009).

Mahon's second claim is that because PRBM is photocopied prior to a buy and bust operation, an arresting officer has the opportunity to "dummy up the receipts." (Mahon Dep. at 93.) Mahon seems to allege that because an arresting officer knows in advance the serial numbers of the marked bills, and is not required to return to the precinct to photocopy or voucher recovered PRBM, it is possible for the officer to falsify evidence by pretending to recover "whatever they want" during a buy and bust operation.  (Mahon Dep. at 93.)  As Mahon does not contest his possession of the $30 of PRBM attributed to him at the time of his arrest, the Court could not possibly determine that he suffered a constitutional injury on this basis.  Morever, Mahon presents no evidence beyond the barest conjecture to establish that the City has a policy of falsifying evidence with doctored receipts. "[S]peculative and conclusory allegations are insufficient to support a claim of municipal liability." Staten v. City of N.Y., 12 Civ. 3544, 2014 WL 3907926 at *6 (S.D.N.Y. Aug. 7, 2014) (collecting cases).  To the extent Mahon implicitly challenges the credibility of the police testimony at his trial, Heck bars that claim, and in any event, this Court is not in a position to disturb a jury's finding as

to a witness' credibility.  See, e.g., United States v. Yu Ming Chen, 597 F. App'x 650, 651 (2d Cir. 2015) ("We will not, however, supplant the jury's evaluation of Li's credibility as a witness, a determination that falls squarely within the jury's purview."); United States v. Bandrich, 12 Cr. 934, 2014 WL 7330434 at *3 (S.D.N.Y. Dec. 22, 2014) ("To the extent Defendant now seeks to impugn the credibility of these and other Government witnesses, 'the proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury.'" (quoting United States v. Roman, 870 F.2d 65, 71 (2d Cir.), cert. denied, 490 U.S. 1109, 109 S. Ct. 3164 (1989))).

Finally, to the extent Mahon's claim is that the City has a duty to preserve all evidence, including PRBM, even a failure to preserve potentially exculpatory evidence does not rise to the level of a due process violation without a showing of bad faith by the police.  See, e.g., Fappiano v. City of N.Y., No. 15-260, --- F. App'x ----, 2016 WL 860255 at *4 (2d Cir. Mar. 7, 2016) ("When a § 1983 fair trial claim is premised upon the failure of the police to preserve potentially exculpatory evidence for future testing, the plaintiff must show that the police destroyed the evidence in bad faith.").  Additionally, to the extent the N.Y.P.D. has a procedure for saving only the smallest bill upon arrest in a buy and bust operation and recycling the remaining PRBM (see page 2 above), other Circuits have found that "destruction of evidence in accordance with an established procedure precludes a finding of bad faith absent other compelling evidence." United States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993); see also, e.g., United States v. Beckstead, 500 F.3d 1154, 1159 (10th Cir. 2007), cert. denied, 552 U.S. 1304, 128 S. Ct. 1757 (2008).  There is no evidence to suggest that the PRBM  recovered from Mahon was exculpatory, or that the City recycles PRBM in a bad faith effort to destroy evidence, exculpatory or otherwise.

As Mahon fails to establish a constitutional violation, or a municipal policy or custom

that caused a constitutional injury, his <u>Monell</u> claim is dismissed.[7/]

### III.   MAHON LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Mahon seeks an injunction against "defendants in their official capacity to stop practice, policy, custom of not vouchering/counting all of the U.S. currency involved in 'buy [and] bust' operations in New York City because inadequate notice/receipt flows from such a practice [and] policy which violates substantive process due and adequate access to courts." (Dkt. No. 2: Compl. ¶ V.) Defendants assert that Mahon lacks standing to seek injunctive relief. (Dkt. No. 38: City Br. at 14-15.)

The Second Circuit has held that "to meet the constitutional minimum of standing to seek injunctive relief," a plaintiff must establish that "'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" <u>Shain</u> v. <u>Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004) (quoting <u>City of L.A.</u> v. <u>Lyons</u>, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 1665 (2004)). "In doing this, he cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future. Finally, abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." <u>Shain</u> v. <u>Ellison</u>, 356 F.3d at 215 (quotations & citations omitted). When challenging an official policy "a plaintiff seeking injunctive relief must demonstrate <u>both</u> a likelihood of future harm <u>and</u> the existence of an official policy or its equivalent." <u>Id.</u> at 216.

To establish standing, Mahon would have to show the likelihood that in the future he would sell narcotics to an undercover officer and be arrested by the N.Y.P.D., with PRBM on his

---

[7/]   As the imposition of supervisory liability requires an underlying constitutional violation, Mahon's claims against Governor Cuomo and Commissioner Bratton likewise are dismissed. <u>See</u>, <u>e.g.</u>, <u>Tompkins</u> v. <u>City of N.Y.</u>, 50 F. Supp. 3d 426, 434 (S.D.N.Y. 2014); <u>Elek</u> v. <u>Inc. Vill. of Monroe</u>, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011).

person, that the PRBM would be confiscated and recycled, that his property would not be listed in its entirety on the property voucher, and that he would have a trial at which photocopies of the PRBM were presented as evidence.  A finding that Mahon is likely to suffer such an injury again is "simply too speculative and conjectural to supply a predicate for prospective injunctive relief." Shain v. Ellison, 356 F.3d at 216; see also, e.g., Williams v. City of N.Y., 34 F. Supp. 3d 292, 297 (S.D.N.Y. July 22, 2014); MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011) (finding plaintiff lacked standing where the "likelihood of suffering the same harm again" depended on his "willfully breaking the law").  Accordingly, Mahon's request for injunctive relief is dismissed.

## IV.   MAHON'S SUPPLEMENTAL STATE LAW CLAIMS ARE UNTIMELY

The Court interprets Mahon's supplemental state law claims for failure to preserve evidence as against both the City and Detective Rodriguez personally.  (Dkt. No. 2: Compl. ¶ II(D).) Defendants argue that Mahon's claims must be dismissed for his failure to commence this action within the applicable state law statute of limitations.  (Dkt. No. 32: City Br. at 13-14.)  Under New York law, an aggrieved individual is required to submit a notice of claim and then bring suit against a municipality or its employees within one year and ninety days "after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. Law § 50-i(1)(c).

Mahon's claim is based on his December 1, 2010 arrest, but he asserts that he was not aware of the City's allegedly inadequate voucher until his trial on May 17, 2012.  (Compl. ¶ II(D).)  Even if the trial date were the proper trigger, Mahon commenced this action in May 2015, more than three years after his trial, and thus his state law claims are untimely.  See, e.g., Daughtry v. New York, No. 12-CV-2655, 2015 WL 2454115 at *10 (E.D.N.Y. Feb. 23, 2015), R. & R. adopted, 2015 WL 2454117 (E.D.N.Y. May 21, 2015); Cooper v. City of New Rochelle, 925 F.

16

Supp. 2d 588, 601 n.7 (S.D.N.Y. 2013).  Accordingly, Mahon's supplemental state law claims are

dismissed.

### CONCLUSION[8/]

For the reasons set forth above, defendants' summary judgment motion (Dkt. No. 34)

is GRANTED.  The Clerk of Court is directed to enter judgment accordingly and to close the case.


SO ORDERED.

Dated:          New York, New York
                April 25, 2016



                                                              _____
                                                              **Andrew J. Peck**
                                                              United States Magistrate Judge


Copies to:     Kalonji Mahon (mail)
               Counsel (ECF)

---

[8/]     If Mahon requires copies of any of the cases reported only in Westlaw, he should request
         copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009);
         SDNY-EDNY Local Civil Rule 7.2.